IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

FILED
02 SEP -6 PM 2:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| GEORGE CARTER, THELMA THOMPSON, and JONAH P. ANDERS, individually and on behalf of all persons similarly situated; and CORALIE PURUCKER, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>ICR SERVICES, INC., d/b/a NATIONAL CREDIT REPAIR; BERNADINO PAVONE, individually; and ABOOD SAMAAN, individually,<br><br>Defendants. | Civil Action Number<br>00-C-2666-W<br><br>**ENTERED**<br>SEP 6 2002 |

**MEMORANDUM OPINION ON PROPOSED SETTLEMENT**

This is a class action in which the certified class alleges that Defendant ICR Services, Inc. ("ICR"), d/b/a National Credit Repair ("ICR") violated the Credit Repair Organizations Act, 15 U.S.C. § 1679b(b) ("CROA") and various laws of the State of Alabama by charging money for credit repair and related services prior to the performance of the services. The individual defendants are the shareholders of ICR.

The case was filed on September 21, 2000. Plaintiffs thereafter vigorously pursued discovery. A national class was certified on June 28, 2001, with Plaintiffs George Carter and Thelma Thompson as the class representatives.

From the subsequent mediation negotiations came a Stipulation and proposed Settlement Agreement, filed with the Court on December 28, 2001. On the same date, the Court preliminarily approved the proposed settlement and certified a settlement class, with Carter and Thompson as the representatives of the subclass of retail customers, and Jonah Andrews as the

132

representative of the independent representatives' subclass. The Court set March 25, 2002, as the date for a fairness hearing.

When class counsel discovered that the requisite notice had not been provided to a substantial number of class members, the scheduled fairness hearing was continued to a later date. The Settlement Agreement was subsequently amended to provide for additional notice to the class, additional funding of the settlement, interim payment to the Settlement Administrator, payment of accrued costs, and an increase in the amount of attorneys' fees requested. Due notice of the Amended Settlement Agreement was provided to all known class members, giving them an opportunity to "opt out" of the settlement class or to file objections to the proposed settlement.

On its motion, the Federal Trade Commission ("FTC") was granted leave to participate in this case as *amicus curiae*.

The fairness hearing was held on August 16, 2002.

### Terms of the Settlement Agreement

Under the terms of the Settlement Agreement, the Defendants deny any liability to the Plaintiffs and the subclasses. Each member of the Customer subclass who was not an Independent Representative of ICR, on the filing of a timely and valid claim, is entitled to forty-two percent (42%) of his/her payments to the corporate Defendants not already refunded, minus a *pro rata* share of attorney's fees, expenses, and costs. Members of this subclass are each entitled to one hour of telephone credit counseling.

Members of the Independent Representative subclass are entitled to five percent (5%) of his/her payments for products of the corporate Defendants not already refunded, on the filing of

a timely and valid claim, minus a *pro rata* share of attorney's fees, expenses, and costs. Members of the Independent Representative subclass are each entitled to one-half hour of telephone credit counseling.

The monetary value of the refunds may be as high as $3,300,000.00. The monetary value of the credit counseling is $2,500,000.00. Class members who receive compensation under the proposed settlement will release

> "any and all claims, rights, or causes of action or liabilities whatsoever, including but not limited to, any claim or right to receive any compensation, recompense, or restitution beyond what is provided in this Settlement Agreement, whether based on federal, state, or local, statutory or common law or any other law (including foreign law), rule or regulation, including but not limited to both known and unknown claims, that have been or could have been asserted in any forum by the Class members or any of their the [sic] successors or assigns of any of them, whether directly, indirectly, representatively or in any other capacity, against any of the Released Parties, which arise out of or relate in any way to the allegations, transactions, facts, matter or occurrences, representations or omissions that were or could have been asserted in the Complaint and/or First Amended Complaint, including but not limited to claims relating in any manner to credit repair services or credit counseling services by the Released Parties."

Stipulation of Settlement, ¶ 23.

Class members who fail to file a claim or a request for exclusion ("opt out") will be bound by the settlement and judgment.

Class counsel seeks $ 1.235 million in attorneys' fees.

### Objections to the Settlement

There are over 160,000 members of the two subclasses. Direct mail notices of the proposed settlement were provided to 144,080 members of the certified subclasses. Notice was also provided on the Internet and through publication in a newspaper of general circulation in the major markets served by Defendant ICR.

3

Class members had filed 18,143 claims as of the date of the fairness hearing. As of the same date, 97 class members had opted out of the proposed settlement.

Only two class members, Ohio residents John Gay and Lashonda Baker, filed objections to the proposed settlement. These objections are based exclusively on the alleged overbreath of the release provided in the settlement. Objectors' counsel expressly disclaimed any intention to "seek to modify the settlement," or to exclude the objectors from the proposed settlement. (Response by John Gay and Lashonda Baker, Doc.126, p. 1.)

The FTC also objects to the proposed settlement, based largely on the requested attorneys' fee. It also objects to the fairness *vel non* of Defendants' entitlement to denying claims of those class members for whom Defendants have failed to provide an "amount paid."

### The Gay-Baker Objection

The Gay-Baker objection is not well taken. They resent having to release their claims against Defendants arising under Ohio law. However, Defendants are entitled to be relieved of all of the credit counseling claims which may be asserted against them by these class members. If they wish to preserve their state law claims, they may even now opt out of the class and pursue the claims in a separate action, for Defendants have agreed to disregard the opt out time limitation if the objectors elect to exclude themselves from the class within fifteen days of the date of the Final Approval of the proposed settlement. If they remain in the class, there is not doubt that they will have released Defendants from the objectors' claims under Ohio law. The language of the Release does confer, as the objectors point out, "a virtual immunity on defendants." *Id.*, p. 2. That is precisely what the Defendants have bargained for, with respect to those class members who accept the benefits of the settlement. The release provision is not

4

unreasonable.

## The FTC Objections

The Court appreciates the FTC's *amicus* involvement in this case. It is pursuing a separate investigation of the Defendants. It has actively monitored the developments in this case and it has assisted the Court in assuring that individualized notices were sent to most of the class members.

FTC's first objection relates to the treatment in the claims process of a category of class members for whom Defendants failed to provide an "amount paid" to the Claims Administrator, as required by the Settlement agreement. This failure may result in a more rigorous verification process for such affected class members. This objection has merit. In response to the objection, Defendants agreed at the fairness hearing to treat the claims of this category of class members as presumptively valid unless Defendants come forward with specific information rebutting the claimed amount.

The FTC's primary objection relates to the amount sought as counsel fees. This objection arises out of the concern that the amount awarded as counsel fees in this action will probably limit the funds available should the FTC prevail in a subsequent broader action against these Defendants. As the FTC realizes, attorneys' fees in a "common fund" case such as this are "based on a reasonable percentage of the fund established for the benefit of the class." *Camden I Condominium Ass'n., Inc. v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991). The benchmark percentage is generally between twenty percent (20%) and forty percent (40%) in this district.

Here, class counsel has established a fund worth over five million dollars. They seek a

fee of roughly twenty-five percent (25%) of the common fund created by their hands. Their request is well within the range of reasonableness. The FTC's objection to the requested counsel fees must be overruled.

## Conclusion

For the reasons enunciated herein, the Court finds that the Stipulation of Settlement, as modified herein, is fair, reasonable, and adequate. Likewise, the attorneys' fee sought by class counsel is fair and reasonable. By separate order, the Court will enter its final approval of the proposed settlement.

Done this ___5th___ day of September, 2002.

_____
Chief United States District Judge
U.W. Clemon